IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ABIRA MEDICAL LABORATORIES LLC,<br>    ***Plaintiff,***<br><br>  v.<br><br>MERITAIN HEALTH, INC.,<br>    ***Defendant.*** | Civil No. 24-3140 |

**MEMORANDUM**

COSTELLO, J.                                                                                **March 30, 2026**

Plaintiff Abira Medical Laboratories ("Abira") performed medical laboratory testing on samples taken from patients insured by Defendant Meritain Health, Inc. ("Meritain"). Abira brought this action after Meritain allegedly refused to pay or underpaid the claims Abira submitted. In its Second Amended Complaint, Abira asserts four causes of action: (1) ERISA benefits; (2) breach of contract for non-ERISA claims, (3) breach of the implied covenant of good faith and fair dealing for non-ERISA claims, and (4) quantum meruit/unjust enrichment for non-ERISA claims. Abira also seeks punitive damages. Meritain has moved to dismiss all claims. For the reasons that follow, the Court will grant Meritain's motion.

**I.     BACKGROUND**

Abira performed "clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing services on specimens submitted by medical service providers" on behalf of Meritain's insureds. ECF No. 30 ¶ 8. It now seeks payment related to 102 claims based on a purported assignment of benefits in the requisitions, which stated:

> I hereby assign all rights and benefits under my health plan and direct payments
> be made to Genesis Diagnostics for laboratory services furnished to me by

Genesis Diagnostics.  I irrevocably designate authorize and appoint Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in-fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal, litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws.

*Id*. ¶¶ 9-10.  As part of Abira's business practice and third-party physician requirements, each of the patients referenced in Exhibit 1 of the Second Amended Complaint ("SAC") "executed or should have executed" an assignment of benefits.  *Id*. ¶ 11.

After Abira submitted the claims to Meritain for payment, Meritain allegedly improperly refused to pay.  *Id*. ¶ 15.  Abira suggests that Meritain's refusal to pay was "groundless," deprived it of thousands of dollars, and is a breach of Meritain's payment obligations.  *Id*.

This Court previously granted Meritain's motion to dismiss the initial complaint in part, after which Abira filed an Amended Complaint.  ECF Nos. 16 & 20.  The Court directed the parties to meet and confer regarding any renewed motion to dismiss.  ECF No. 26.  The Court granted the parties' request for a schedule that would allow Meritain to produce all plan documents related to the claims in the Amended Complaint before Abira filed its Second Amended Complaint ("SAC").  ECF Nos. 27 & 28.

Abira filed its SAC seeking benefits for 102 total claims.  ECF No. 30.  Of these claims, 62 are related to ERISA plans, 15 claims are Medicare Advantage claims, and Meritain cannot identify the remaining 25 claims.  Additionally, 27 plans governing 60 of the 62 ERISA claims contain anti-assignment provisions.  ECF No. 31-1 at 2; ECF No. 31-2 at 2-5.

Meritain moves to dismiss the SAC in its entirety.  In part, Meritain challenges Abira's standing to bring its ERISA claims, the Court's subject matter jurisdiction over the Medicare Advantage claims, and the factual sufficiency of the remaining claims and requested punitive

damages. *See generally* ECF No. 31. Abira opposed the motion after this Court ordered it to respond. ECF Nos. 35 & 36.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must include sufficient factual matter, taken as true, to show that the claim is facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Assessing plausibility under *Twombly* requires three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id*. (internal quotations and alterations omitted). Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court must accept as true all "'well-pleaded factual allegations,'" draw all reasonable inferences from those allegations, and "'determine whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679) (alterations omitted). "If the well-pleaded facts do nut nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint." *Lynch v. Tasty Baking Co*., 23-4445, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

3

### III.    DISCUSSION

#### A.    ERISA Claims

Meritain first moves to dismiss Abira's ERISA claims, arguing that the Court lacks subject matter jurisdiction because Abira lacks both Article III standing and derivative standing due to enforceable anti-assignment provisions.  Meritain also contends that Abira otherwise failed to plead a plausible ERISA claim.

##### 1.    *Standing and Anti-Assignment Provisions*

Although Federal Rule of Civil Procedure 12(b)(1) ordinarily governs motions to dismiss for lack of standing, the Third Circuit has clarified that "whether a party has derivative standing to file an ERISA claim 'involves a merits-based determination,' such that a motion to dismiss for lack of ERISA standing — like the one at issue — is 'properly filed under Rule 12(b)(6).'"  *Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x. 60, 62 n. 1 (3d Cir. May 16, 2019).

ERISA authorizes suit by "participants" and "beneficiaries" of ERISA plans, but "health care providers may obtain standing to sue by assignment from a plan participant."  *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014); *see also N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) ("[W]hen a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a).").

"[A]nti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable."  *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018).  This is because "a plan trustee can limit the ability of a beneficiary to assign claims because, among the parties' 'power to limit the rights created by their agreement,'. . . is

4

the power to restrict ownership interest to particular holders." *Id*. at 454-45 (citing Restatement (Second) of Contracts § 322 cmt. a (1981)).

Abira brings 62 claims for ERISA benefits based on alleged assignments. However, 27 of the 29 ERISA plans contain an anti-assignment provision, thereby invalidating the assignments Abira allegedly obtained. These 27 plans cover all but two of Abira's ERISA claims. Accordingly, Abira lacks derivative standing for 60 of its 62 ERISA claims.

Abira suggests that Meritain waived its right to enforce the anti-assignment provision because it did not invoke the anti-assignment provision during the administrative claims process and made partial payment on some claims. ECF No. 33 at 13. The Third Circuit rejected this argument in *American Orthopedic*, explaining that the "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate 'an evident purpose to surrender' an objection to a provider's standing in a federal lawsuit." *Am. Orthopedic*, 890 F.3d at 454 (internal citations omitted) (observing that waiver requires a "clear, unequivocal, decisive act of the party with knowledge of such right and an evident purpose to surrender it"). Abira does not suggest that anything other than routine acts result in waiver here, and it has therefore failed to demonstrate a clear and unequivocal waiver.

Abira also contends that the anti-assignment language found "in certain of the plans are ambiguous as the plan provides for assignments in the case of authorization by plan administrators." ECF No. 33 at 14. But Abira does not cite any authority suggesting that a consent-to-assign clause creates legal ambiguity. Moreover, Abira must plead facts to establish standing. To do so for plans that contain this language, Abira must allege facts to show that it sought and received authorization. It has not done so.

Without a valid assignment, Abira is not a "participant" or "beneficiary," and it therefore lacks standing under ERISA. Accordingly, the Court will grant Meritain's motion and dismiss the 60 ERISA claims based on the anti-assignment provision in the governing policy.[1]

### 2.    Failure to State ERISA Claim

Meritain argues that Abira's two remaining ERISA claims fail to state a plausible claim for relief, because the SAC does not cite specific plan provisions entitling Abira to recovery.

While Abira does not specify which section of ERISA it is bringing its claims under, Section 502(a)(1)(B) of ERISA allows a plan participant to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To plead a claim under this provision, a plaintiff must demonstrate that the benefits are "due," meaning the plan participant "ha[s] a right to benefits that is legally enforceable against the plan," and the plan administrator improperly denied those benefits. *Hooven v. Exxon Mobile Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

To establish a right to benefits that is enforceable against the plan, plaintiffs generally must identify or discuss the applicable plan provisions. However, District Courts within this Circuit have required different levels of specificity related to the plan provisions.

This District has declined to require the plaintiff to allege which specific ERISA plan provision was violated where the complaint alleged that the plans covered "medically necessary" and "non-experimental" services and specifically asserted that the genetic tests provided met those definitions. *Genomind, Inc. v. UnitedHealth Group Inc.*, No. 21-373, 2021 WL 3929723,

---

[1]    Because the Court finds that Abira lacks derivative standing, it will not reach the merits of Meritain's Article III standing argument.

6

at *4 (E.D. Pa. Sept. 1, 2021).  Conversely, the District of New Jersey often requires plaintiffs to identify the specific plan provision at issue and explain how it mandates reimbursement.  *See Atlantic Spine Ctr., LLC v. Deloitte, LLP Group Ins. Plan*, No. 23-614, 2024 WL 1092526, at *6 (D.N.J. Mar. 12, 2024) (collecting cases).  In *Atlantic Spine*, the Court dismissed the ERISA claim because, although the plaintiff identified a specific plan provision which purportedly entitled it to relief, it failed to plead how its demand for reimbursement fell under the terms of the provision.  *Id*.  Additionally, that Court has rejected a plaintiff's "cookie cutter" assertions. *BrainBuilders, LLC v. Aetna Life Ins. Co*., No. 17-3626, 2024 WL 358152, at *9 (D.N.J. Jan. 31, 2024) (dismissing ERISA claims as "too imprecise" to be plausible where plaintiffs identified language from only four plans to support claims involving 56 plans and 90 patients, and otherwise relied on "cookie cutter" assertions that "upon information and belief" the plan permitted certain out-of-network services and provided reimbursement).

Abira's allegations are more akin to the insufficient "cookie cutter" allegations in *BrainBuilders* than the allegations that were upheld in *Genomind*.  Abira generally asserts that the plans referenced in Exhibit 1, "provide for coverage for laboratory for non-participating providers for eligible medical expenses, whether the specimen is taken at the doctor's office during an office visit, during emergency service, alternative facility and outpatient basis as a hospital."  ECF No. 30 ¶ 20.  Abira performed "Laboratory Testing Services upon specimens" submitted by Meritain's insureds and submitted the claims to Meritain seeking benefits under the plan.  *Id*. ¶¶ 26-7.  But merely performing services and submitting claims seeking benefits does not sufficiently allege that the plan provided coverage.  For example, there are no allegations that the testing Abira performed constituted "eligible medical expenses" under each of the plans.

Furthermore, Abira's allegations regarding its entitlement to benefits are conclusory. Abira suggests that it is eligible for benefits under "said policy or plan, and the Defendant have wrongfully denied or underpaid Plaintiff's claim(s)" and the "denial or underpayment of similar claims for other benefits as reflected in the Contracts are arbitrary, capricious and unreasonable." *Id*. ¶¶ 24, 31-2.  Abira offers no factual support for these conclusions, nor does it identify any specific reason it is entitled to benefits under the plan.  Additionally, while Abira notes that the plans generally provide for the payment at the "usually reasonably customary rate," Abira does not allege that the partial payments Meritain made fell below that rate.  *Id*. ¶ 21.

Even where Abira references two specific plans, its allegations remain conclusory.  For the Vista Hills Family Dental, LLC plan, Abira alleges that coverage exists for emergency treatment and ancillary services where "the covered person had no control over provider," but fails to explain why or how the patient lacked control over the provider here.  *Id*.  Regarding the Thales Flexible Benefit Plan, Abira notes that "non-participating providers are paid 90% after the deductive [sic]" but fails to allege whether it received a payment below that amount.  *Id*. ¶ 21.

Ultimately, Abira presents 62 ERISA claims covered by 29 different policies but only references fragments of two policies.  Although only two claims remain—one related to the Vista Hills Plan and one related to the Allstate Cafeteria Plan—Abira's allegations in the SAC are too imprecise to render its claims facially plausible.

Finally, the Court is unpersuaded by Abira's reference to one of its other pending cases. In its response, Abira notes that its ERISA cause of action has been ordered to proceed as plead in an action currently pending in Tennessee.  ECF No. 33 at 16 (citing *Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics v. BlueCross BlueShield of Tennessee, Inc., BlueCare Tennessee*, No. 1:24-cv-00329-TRM-CHS (E.D. Tenn. May 28, 2025)).  What Abira

omits, however, is that the District Court in that case denied the motion to dismiss because it was "not convinced Genesis must make such detailed factual allegations about the ERISA plans when, based on the facts alleged, there is no reason to believe it had access to" the policies. In this case, the Court previously ordered limited discovery, during which Meritain turned over the plans at issue. Meaning, Abira had access to the policies prior to drafting its SAC. Accordingly, there is no reason Abira could not identify the plan provisions it believes entitle it to relief.

### B.    Medicare Advantage Claims

Meritain next argues that 15 claims related to patients enrolled in Medicare Advantage plans are preempted by the Medicare Act and must be dismissed because Abira failed to exhaust the mandated administrative remedies. Because administrative exhaustion is a prerequisite to the Court's jurisdiction under the Act, the Court addresses this issue first.

The federal Medicare program provides health insurance coverage to people 65 years of age or older and certain other qualifying beneficiaries, such as people with disabilities. *Medicaid & Medicare Advantage Products Ass'n of Puerto Rico, Inc. v. Emanuelli Hernández*, 58 F.4th 5, 8 (1st Cir. 2023) (citing 42 U.S.C. § 1395c; *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 89 (1st Cir. 2020)). The Secretary of the Department of Health and Human Services ("HHS") administers the Medicare program through the Centers for Medicare and Medicaid Services ("CMS"). *Id*. (internal citation omitted).

Under Parts A and B of the Medicare Act, the federal government pays healthcare providers directly for a limited array of specified services according to a fee-for-service schedule set by CMS. *Id*. (internal citations omitted). Part C establishes a "Medicare Advantage" program through which CMS contracts with private organizations, Medicare Advantage Organizations ("MAOs"), who in turn contract with healthcare providers to supply the mandated

Medicare benefits and additional benefits. *Id*. (citing *UnitedHealthcare Ins. Co. v. Becerra*, 16 F.4th 867, 872-73 (D.C. Cir. 2021)). Part C standards supersede any State law or regulation. 42 U.S.C. § 1395w-26(b)(3). Meritain's administration of the Medicare Advantage plans is subject to this framework. ECF No. 31-33 at 19.

A party seeking judicial review of a dispute involving a claim under a Medicare Advantage plan must first exhaust an administrative review process. *See Heckler v. Ringer*, 466 U.S. 602, 606 (1984). The administrative review process involves four levels: "(1) a request for 'redetermination' of an initial determination by a Medicare carrier; (2) 'reconsideration' by another Medicare contractor called a 'Qualified Independent Contractor' ("QIC"); (3) hearing before an Administrative Law Judge ("ALJ"); and, (4) appeal to the Medicare Appeals Council ("Council") for a final decision." *Nationwide Ambulance Servs., Inc. v. Safeguard Servs.*, LLC, No. 11-5213, 2011 WL 4753415, at *2 (D.N.J. Oct. 7, 2011) (internal citation omitted). After the fourth level is reached, a party may seek review of the Counsel's final decision in Federal District Court. *Id*. (citation omitted). If a party fails to exhaust this process, the district court lacks statutory authorization to hear the case. *See Est. of Lego v. Leavitt*, 244 F. App'x 227, 232 (10th Cir. 2007). This administrative review process also applies to providers, who may proceed as an assignee of the enrollee's right to coverage, though the regulations require that the provider waive any right to payment from the enrollee. 42 C.F.R. §§ 422.566(c)(1)(ii), 422.574(b).

"Jurisdiction over cases 'arising under' Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review." *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1111 (9th Cir. 2003) (emphasis added) ("Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action."); *Heckler*, 466

U.S. at 614-15.  The Supreme Court has identified two scenarios where a claim "arises under" the Medicare Act: (1) where the "standing and the substantive basis for the presentation of the claims" is the Medicare Act, and (2) where the claims are "inextricably intertwined" with a claim for Medicare benefits.  *Heckler*, 466 U.S. at 614-15.

To determine whether the claim arises under the Act, courts look beyond the characterization of the claim and have regularly found that "[c]leverly concealed claims for benefits" arise under the act.  *Kaiser*, 347 F.3d at 1112 (internal citation omitted).  For example, in *Heckler*, the Supreme Court denied jurisdiction in a case where plaintiffs sought Medicare coverage for certain medical procedures but formulated their claims under various sources of law (the Constitution and other statutes) outside of the Medicare Act.  466 U.S. 609-10.  Additionally, state law claims may "arise under" the Act.  *Kaiser*, 347 F.3d at 1113-15.

Here, Abira's state law claims are inextricably intertwined with a claim for Medicare benefits.  The gravamen of Abira's SAC is that Meritain improperly denied or underpaid claims for services provided to Medicare beneficiaries, thereby unjustly enriching itself.  Because each claim challenges Meritain's benefit decisions with respect to the compensation Abira was entitled to for services it provided to Medicare beneficiaries, these claims arise under the Act.  *See Prime Healthcare Services, Inc. v. Humana Ins. Co.*, 230 F. Supp. 39 1194, 1204-07 (C.D. Cal. 2017) (finding that claims for breach of contract and breach of the covenant of good faith and fair dealing based on disputed expenses relating to Medicare Advantage members "arise under" the Act and are subject to the exhaustion requirements); *see also Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1143-44 (9th Cir. 2010) (holding that unjust enrichment claims stemming from an alleged failure to receive promised coverage were required to be administratively exhausted).

11

Accordingly, Abira was required to satisfy the administrative exhaustion requirements as a jurisdictional prerequisite. It has not done so.

With respect to administrative exhaustion of the Medicare claims, Abira's SAC states only: "Plaintiff exhausted administrative remedies under the plan," and " [i]f found that Plaintiff has not exhausted administrative remedies, Plaintiff contends that the requirement of exhaustion is futile and/or Defendant waived the defense through their course of conduct." ECF No. 30 ¶¶ 41-42. These legal conclusions, devoid of factual support, are insufficient.

Exhaustion here is a multi-step process that would have culminated in Abira receiving a final decision from the Medicare Appeals Council. Abira does not allege facts related to any request for redetermination or reconsideration. It also does not allege that Abira proceeded to a hearing before an Administrative Law Judge or otherwise appealed to the Medicare Appeals Council. One conclusion without any supporting facts is insufficient to plausibly allege that Abira satisfied the multi-step exhaustion requirement. The Court therefore lacks subject matter jurisdiction.[2]

In its response, Abira suggests that even if it has not exhausted its remedies, the requirement is futile, or defendant waived the defense. But failure to exhaust leaves this Court without jurisdiction. Additionally, Courts have rejected futility arguments in this context. In *Uhm*, the Ninth Circuit held that the plaintiffs could not circumvent § 405(h)'s requirements by suing Humana, Inc, and allowing otherwise would "defeat the purposes of" the Act's exhaustion requirement. *Uhm*, 620 F.3d at 1144-45 (explaining that although administrative remedies may

---

[2]    Because this Court lacks subject matter jurisdiction based on Abira's failure to sufficiently allege that it exhausted the mandated administrative review process, it need not reach Meritain's preemption argument. *See SM Med. Holdings Corp. v. Care Improvement Plus*, No. 24-6607, 2025 WL 2992399, at *3, n. 1 (declining to reach preemption and failure to state a claim arguments because it lacked subject matter jurisdiction based on failure to exhaust).

not be available against defendant, claims "arising under" the Act must be brought before the Secretary before judicial review can be sought); *see also Kaiser*, 347 F.3d at 1116 n. 4 (the mere fact that an administrative remedy is not available for a particular claim does not mean that the claim does not "arise under" the act).

### C.    25 Unidentified Claims

Exhibit 1 of Abira's SAC contains information, such as accession number, patient name, and policy IDs, relating to 102 claims.  ECF No. 30-1 at 2-3.  Having already dismissed 77 claims, only 25 remain.  Meritain argues that these claims must be dismissed because, even with the information provided, it cannot identify them within its systems.

While the Court must generally accept a plaintiff's factual allegations as true at the pleading stage, Federal Rule of Civil Procedure 8 requires that those allegations provide "fair notice" of the claim and the grounds upon which it rests.  *Twombly*, 550 U.S. at 555.  "[A] pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8."  *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) (internal citation omitted).

Abira has not provided fair notice regarding the 25 unidentified claims.  Of the 40 claims Abira left uncategorized in its spreadsheet, every claim Meritain could identify was a Medicare Advantage claim subject to dismissal for failure to exhaust administrative remedies.  ECF No. 30-1 at 2-3.  If these remaining 25 claims are also Medicare claims, which is a reasonable assumption given that Abira did not categorize any of the other Medicare claims, the Court lacks subject matter jurisdiction over them.  By failing to categorize these claims, Abira has not provided sufficient information for the Court to satisfy itself of its jurisdiction.  And, at a

minimum, Abira has failed to provide "fair notice" under Rule 8, as Meritain cannot reasonably prepare a response to claims it cannot locate within its systems.

Abira responds that it does not have to plead every factual item, and it will provide more information such as "requisitions for the laboratory testing services, health insurance forms, testing result and other pertinent information for Defendant to further investigate the claims at issue in this matter." ECF No. 33 at 17. However, this argument overlooks that Meritain cannot identify these claims within its system based on the information currently provided, leaving it unable to reasonably prepare a response.

Additionally, Abira attempts to shift the burden by noting that Meritain's explanation of its inability to find the claims fails to "provide further information as to whether the individual is a member/subscriber/insured of the Defendant and other pertinent information that can be exchanged between the parties during the discovery phase to substantiate Plaintiff's claims." *Id*. at 18. This argument is flawed. Meritain cannot provide information regarding the insurance status of individuals it cannot locate in its records. Given that Meritain is the sole defendant, Abira presumably only would have included claims it believed related to an individual covered by a Meritain policy. Because Meritain cannot respond to claims it cannot locate, and because the Court cannot verify its own subject matter jurisdiction, the Court will dismiss the 25 unidentified and uncategorized claims without prejudice.

### D.     Punitive Damages

Finally, the Court will dismiss Abira's request for punitive damages because none of Abira's claims are eligible for punitive damages. Punitive damages are not recoverable under ERISA, as Congress did not make such a remedy available under that statute. *See Mandracchia*

*v. Indep. Blue Cross & Blue Shield*, No. 21-3319, 2023 WL 12225693, at *6 (E.D. Pa. May 23, 2023) (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014)).

Abira's non-ERISA, state law claims similarly do not provide for punitive damages.  In Pennsylvania, punitive damages are not recoverable in a breach of contract claim, and because the breach of the implied covenant of good faith and fair dealing is not recognized as an independent cause of action, it likewise cannot support such a request.  *See Dehart v. HomEq Servicing Corp.*, 679 F. App'x 184, 189 (3d Cir. 2017).  Finally, because quantum meruit and unjust enrichment are equitable, quasi-contractual remedies, they do not permit the recovery of punitive relief.  *See Sunburst Paper, LLC v. Keating Fibre Intern., Inc.*, No. 06-3959, 2006 WL 3097771, at *4 (E.D. Pa. Oct. 30, 2006); *Motorola, Inc. v. Airdesk, Inc.*, No. 04-4940, 2005 WL 894807, at *3 (E.D. Pa. Apr. 15, 2005).

### E.    Leave to Amend

Courts have broad discretion to grant leave to amend "when justice so requires."  *See* FED. R. CIV. P. 15(a)(2).  The Federal Rules express "'a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile."  *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).

Meritain asks the Court to dismiss with prejudice because Abira has had multiple opportunities to amend its complaint.  However, Meritain's previous motion to dismiss did not raise the central arguments presented in the instant motion.  Furthermore, the current dismissal is largely based on a lack of subject matter jurisdiction, which is generally ordered without prejudice as it is not an adjudication on the merits.  *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir.1999).  The Court will therefore grant Abira a final opportunity to amend.

However, certain claims remain barred.  The Court previously dismissed Abira's claim for breach of good faith and fair dealing with prejudice, and Abira may not reassert it.  ECF No.

16 at 4. Additionally, the Court previously dismissed Abira's claim for punitive damages without prejudice because none of its surviving claims were eligible for such relief. Because each claim in the SAC is ineligible for punitive damages, further amendment would be futile. The Court will therefore dismiss Abira's claim for punitive damages with prejudice. If Abira fails to cure the identified defects in its fourth amended complaint, the Court will dismiss this action with prejudice.

## IV.    CONCLUSION

Abira's ERISA claims will be dismissed because the plans governing 60 claims contained valid anti-assignment provisions, and Abira otherwise failed to state a claim when it failed to identify plan provisions or explain how the plans mandated reimbursement. This Court lacks subject matter jurisdiction over the 15 Medicare Advantage claims due to Abira's failure to exhaust mandated administrative remedies. As for the 25 unidentified claims, Abira failed to provide fair notice or a sufficient basis for Meritain to respond or for the Court to verify its jurisdiction. Finally, punitive damages are not available under any of the asserted causes of action. Accordingly, the Court will dismiss the Second Amended Complaint in its entirety.

An appropriate Order follows.

**BY THE COURT:**

_____
MARY KAY COSTELLO, J.

16